UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DR. ZEIN HAIDAR,

      Plaintiff,

   v.

WALMART INC.,
WALMART STORES, INC. and
SAM'S EAST, INC.,

      Defendants.
_____/

Case No. 24-12061

Honorable Nancy G. Edmunds

OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR PARTIAL DISMISSAL (ECF NO. 9)

    Plaintiff, Dr. Zein Haidar, is a licensed pharmacist who alleges that Defendants, Walmart Inc., Walmart Stores, Inc. and Sam's East, Inc., wrongfully terminated him from his employment. Plaintiff's Amended Complaint alleges (1) retaliation, discrimination, and hostile work environment based on race, national origin, and religion in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5 (Title VII) and the Elliot-Larsen Civil Rights Act of 1976 (ELCRA) (Counts I-IV, VII); (2) wrongful termination in violation of public policy (Count V); (3) breach of his employment contract (Count VI); and (4) a violation of the Fair Credit Reporting Act 15 U.S.C. §1681 et seq. (Count VIII).

    The matter is before the Court on Defendants' motion to dismiss Counts V, VI and VIII for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). The motion has been fully briefed. Upon a careful review of the written submissions, the Court deems it appropriate to render its decision without a hearing

pursuant to Local Rule 7.1(f)(2). For the reasons set forth below, Defendants' motion for partial dismissal of the Amended Complaint is GRANTED.

BACKGROUND FACTS

On October 24, 2018, Defendants hired Plaintiff as a licensed pharmacist at its Sam's Club retail location in Southgate, Michigan. (ECF No. 7 at ¶ 16.) At the time he was hired, Plaintiff was provided with Defendants' Employee Handbook, which outlines the terms and conditions of employment, including reporting obligations and disciplinary procedures. *Id*. at ¶ 21. The Employee Handbook's reporting policy requires employees to report to their manager if they are arrested or charged with a felony offense, or convicted of a misdemeanor or felony involving sexual, drug, theft or violent offenses. The Handbook provides that the employer will conduct a review to determine if reported charges are job-related, in which case the employee will be suspended without pay for up to 12 months, pending the outcome of the charges. If the charges are determined not to be job-related, the employee will be allowed to continue working. Failure to report as required subjects the employee to discipline, up to and including termination. (ECF No. 9, PageID.234.)

In March 2021, Plaintiff was arrested and charged with criminal felonies. (ECF No. 7 at ¶ 26.) Plaintiff alleges that he informed his supervisor within three days of being charged, in compliance with the Employee Handbook. *Id*. at ¶ 29. He further asserts that he provided all necessary documentation and cooperated fully with Defendants' inquiries regarding the status of his legal matters. *Id*. at ¶ 31. Following his disclosure of the criminal charges against him, Plaintiff was subjected to disciplinary actions by Defendants. In March 2021, Plaintiff's supervisor issued a Level 1 disciplinary action for

alleged cell phone usage. *Id*. at ¶ 46. In October 2021, his supervisor issued a Level 2 disciplinary action based on "vague and unsubstantiated allegations." *Id*. at ¶ 47. Plaintiff appealed the Level 2 discipline, which was subsequently rescinded. *Id*. at ¶ 48. Plaintiff refers to the disciplines as "retaliatory in nature" and states that Defendants relied upon them in eventually terminating his employment. *Id*. at ¶ 51.

Plaintiff alleges that Defendants conducted a criminal background check on him as part of its standard employment screening process. *Id*. at ¶ 34. Plaintiff does not provide a timeframe as to when this background check was done. On March 24, 2023, Plaintiff was summoned to a meeting with Defendants' management team. *Id*. at ¶ 62. During the meeting, Plaintiff was questioned about his criminal charges. *Id*. at ¶ 63. On March 31, 2023, via email, Defendants terminated Plaintiff's employment for violating policy by failing to report his criminal charges in a timely manner. (ECF No. 7. at ¶ 65; ECF No. 7-5, PageID.168.) Plaintiff describes Defendants' stated reason as false and pretextual, maintaining he timely reported the criminal charges pursuant to the terms of the Employee Handbook. (ECF No. 7 at ¶¶ 67-69.) He states the real reason for his termination is discriminatory animus based on his race, national origin and religion. *Id*. at ¶ 53.[1]

The felony charges against Plaintiff are still pending. Neither the Michigan Board of Pharmacy nor any other regulatory authority has revoked Plaintiff's licensure or imposed sanctions against him based on the criminal charges. *Id*. at ¶ 33. Plaintiff

---

[1] The Amended Complaint describes acts that allegedly constitute employment discrimination, hostile work environment and retaliation based on Plaintiff's race, national origin and religion. See ECF No. 7 at ¶¶ 54-61, 70-72. These allegations are not discussed here because they are not relevant to the pending motion for partial dismissal.

earned positive performance reviews during his four and a half years of employment with Defendants. *Id*. at ¶¶ 17, 19, 20.

Following his termination, Plaintiff applied for unemployment benefits. *Id*. at ¶ 91. On April 19, 2023, the Michigan Unemployment Insurance Agency issued a Notice of Determination stating that Plaintiff was terminated due to "personality differences" and that misconduct in connection with work has not been established. (ECF No. 7-6, PageID.179.) The EEOC issued a Right to Sue letter on May 10, 2024. (ECF No. 7-7, PageID.185.)

## LAW AND ANALYSIS

I.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (internal quotation marks omitted).

When ruling on a motion to dismiss, the court may "consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

II.      Count V - Wrongful Termination in Violation of Public Policy

    A.  Statutory Preemption

Plaintiff alleges that he complied with the terms of the Employee Handbook by timely disclosing his felony charges to his supervisor. Nevertheless, Defendants falsely accused him of failing to report as mandated by company policy. (ECF No. 7 at ¶¶ 230-231.) On March 24, 2023, Defendants summoned Plaintiff to a meeting with its management team, and on the following day it suspended Plaintiff without pay. *Id*. at ¶ 233. A week later, Defendants terminated Plaintiff by email, citing non-compliance with reporting obligations as the basis of his termination. *Id*. at ¶ 234. Plaintiff contends that his termination was retaliatory in violation of Michigan public policy.

Michigan law only recognizes a violation of public policy claim "where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue." *Dudewicz v. Norris-Schmid, Inc.*, 503 N.W.2d 645, 650 (Mich. 1993). In cases where the facts that give rise to a plaintiff's public policy claim are the same as those that would support a statutory claim, the public policy claim will be dismissed. *Zimmerman v. Elizabeth A. Pensler, D.O., PLLC*, No. 23-11634, 2024 WL 3881472, at *4 (E.D. Mich. Aug. 20, 2024); *see also Barton v. Neely*, No. 23-10051, 2023 WL 8039408, at *6 (E.D. Mich. Nov. 20, 2023).

In Count VII, Plaintiff alleges that he was retaliated against for engaging in protected activity comprised of reporting his felony charges in adherence with company policy. (ECF No. 7 at ¶¶ 285-292.) Although Plaintiff frames Count VII as a hostile work environment claim pursuant to Title VII and ELCRA, his claim is based on facts that also support a retaliatory firing claim under the same statutes. Because Title VII and ELCRA

provide protections against employer retaliation, s*ee* Mich. Comp. Laws § 37.2701(a) (ELCRA); 42 U.S.C. § 2000e-3(a) (Title VII), Plaintiff has an available statutory remedy and cannot bring the same claim under common law. *See Kamal v. Ford Motor Co.*, No. 24-12073, 2025 WL 1691193, at *3 (E.D. Mich. June 16, 2025).

Count V is preempted by statute and fails as a matter of law.

B.  Failure to State Cognizable Basis for Public Policy Claim

Under Michigan law, an at-will employee may be discharged at any time for any or no reason. *Suchodolski v. Michigan Consol. Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1982). However, Michigan courts have recognized an exception "to that rule, based on the principle that some grounds are so contrary to public policy as to be actionable." *Id.* Public policy in Michigan is violated when: (1) a statute specifically prohibits the discharge; (2) the employee is discharged for refusing to violate the law; or (3) the employee is discharged for exercising a well-established statutory right. *Barton*, 2023 WL 8039408, at *6 (citing *Lewandowski v. Nuclear Mgt.*, 724 N.W.2d 718, 723 (Mich. Ct. App. 2006)). Further, "if a statute provides a remedy for a violation of a right, and no common-law counterpart right exists, the statutory remedy is typically the exclusive remedy." *Id*.

As to the first exception, Plaintiff alleges, "Michigan Penal Code and Fair Employment (MCL § 37.2205a) prohibits employers from taking adverse actions based solely on an arrest or a charge, absent a legitimate business necessity." (ECF. No. 7, at ¶ 250.) The statute Plaintiff cites as prohibiting his discharge applies only to misdemeanors, expressly stating that "[t]his section does not apply to information relative to a felony charge before conviction or dismissal."  Mich. Comp. Laws §

37.2205a(1). As plaintiff was charged with felonies, Plaintiff has failed to identify a statute that specifically prohibits his discharge.

Second, Plaintiff contends that he fulfilled his obligation by reporting his arrest on felony charges and was terminated as a result. Plaintiff's argument falls short because he does not allege that Defendants directed him to violate a law or that he refused to violate the law. Plaintiff does allege that Defendants falsely accuse him of failing to report his pending criminal charges. This argument may be relevant to Plaintiff's pretext burden under Title VII and ELCRA, but it does not support a public policy claim.

Third, Plaintiff can still state a public policy claim if he alleges that he was discharged for exercising a well-established statutory right. In Count V, Plaintiff recites the public policies that individuals are presumed innocent until proven guilty, and that employers should conduct proper investigations and provide an opportunity for employees to respond to allegations when making employment decisions. (ECF. No. 7, at ¶ 236, 242.) However, these are not statutory rights, nor does the presumption of innocence apply in the civil context. *Bonner v. Fam. Indep. Agency*, No. 04-74574, 2005 WL 3478362, at *7 (E.D. Mich. Dec. 20, 2005).

Having concluded that Plaintiff fails to state a basis for his public policy claim, and that such claim is preempted by statute, Defendants' motion to dismiss will be granted as to Count V of the Amended Complaint.

III.   Count VI - Breach of Contract

To properly plead a breach of contract claim, Plaintiff must first demonstrate that a valid contract exists between itself and Defendants. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003). Michigan law presumes that "employment relationships are terminable

at the will of either party." *Lytle v. Malady*, 579 N.W.2d 906, 910 (Mich. 1998) (citing *Lynas v. Maxwell Farms*, 273 N.W. 315 (Mich. 1937)). To rebut the presumption of at-will employment, plaintiff must demonstrate either a "contract provision for a definite term of employment, or one that forbids discharge absent just cause." *Id*. at 911 (citing *Rood v. Gen. Dynamics Corp.*, 507 N.W.2d 591 (Mich. 1993)). The Michigan Supreme Court has explained that this requirement can be satisfied in three different ways: (1) proof of a definite term or definite provision forbidding discharge absent just cause; (2) a clear and unequivocal express agreement precluding discharge absent cause; or (3) an implied contractual provision where an employer's policies and procedures instill a legitimate expectation of job security in the employee. *Id*.

The Amended Complaint relies on the third method of demonstrating a contractual provision. Plaintiff alleges that policies in the Employee Handbook gave him a legitimate expectation of job security and therefore an enforceable contract. Under Michigan law, written statements in a company's employee handbook can give rise to contractual obligations on the part of the employer. *See Toussaint v. Blue Cross & Blue Shield*, 292 N.W.2d 880, 890 (Mich. 1990). Here, Plaintiff alleges that the "Employee Handbook and corporate policies served to create an implied contract between Plaintiff and Defendants…" because "[b]y providing the employee Handbook and corporate policies, Defendants created contractual obligations to treat Plaintiff fairly, conduct proper investigations before disciplinary actions, and adhere to established procedures in employment decisions." (ECF. No. 7, at ¶ 23, see also ¶¶ 22, 257.)

In evaluating legitimate expectations claims, the first step is to determine what the employer has promised. *Rood v. Gen. Dynamics Corp.*, 507 N.W.2d 591, 606 (Mich.

1993). The second step "is to determine whether the promise is reasonably capable of instilling a legitimate expectation of just-cause employment in the employer's employees." *Id*. at 607.

Here, the reporting policy section of the Employee Handbook expressly provides that the information contained therein does not create a contract. (ECF No. 9, PageID.235.) The reporting policy also states that "Walmart may modify this information at its sole discretion without notice, at any time, consistent with applicable law. *Id*. Under Michigan law, general employment policies that apply to all employees, as opposed to specifically negotiated terms, fail to give rise to express or implied contracts. *See Dolan v. Cont'l Airlines/ Continental Express*, 563 N.W.2d 23, 29 (Mich. 1997). Further, the Michigan Supreme Court has held that a contract is not created when an employee handbook expressly states it does not create an employment contract and that it may be modified at the employer's sole discretion. *See Heurtebise v. Reliable Bus. Computs.*, 550 N.W.2d 243, 247 (Mich. 1996) (concluding, "[t]his demonstrates that the defendant did not intend to be bound to any provision contained in the handbook.").

Plaintiff responds that Defendants' assurances were specific, induced his reliance, and created a reasonable expectation of fair treatment. However, Plaintiff does not cite any facts or authority to support his argument that the nature of the policies in the Employee Handbook, or his reliance upon them, overrides Michigan law as discussed above. *See Shaughnessy v. Interpublic Grp. of Cos., Inc.*, 506 F. App'x 369, 375 (6th Cir. 2012) (affirming dismissal of breach of contract claim where "Plaintiff did not allege any extrinsic or circumstantial facts beyond the Code [of Conduct] itself from

which this Court could infer Defendant's clear and unambiguous intent to create the employment relationship . . . that Plaintiff seeks to impose.)

The final argument advanced by Plaintiff is that he relied on Defendants' promises of fair treatment, which supports a promissory estoppel claim under Michigan law. Because Plaintiff does not plead a claim for promissory estoppel in his Amended Complaint, the Court need not address this argument.

The Court finds that Plaintiff has failed to plead a cognizable breach of contract claim based on provisions in Defendants' Employee Handbook. Defendants' motion to dismiss Count VI of the Amended Complaint will be granted.

IV.   <u>Count VIII - Violation of Fair Credit and Reporting Act</u>

The Amended Complaint alleges that Defendants conducted a criminal background check on Plaintiff as part of its standard employment screening process. (ECF No. 7 at ¶ 34.) Plaintiff contends this criminal background check constitutes a consumer report under the FCRA, 15 U.S.C. § 1681a(d). *Id*. at ¶ 319. Defendants allegedly utilized the information contained in the consumer report in deciding to discipline and terminate Plaintiff's employment. *Id*. at ¶ 320. Plaintiff asserts Defendants violated § 1681b(b)(3)(A)(i) and (ii) of the FCRA by failing to provide him with a copy of the consumer report, as well as pre-adverse action notice and an opportunity to contest inaccuracies in the report, before taking adverse employment actions against him. *Id*. at ¶¶ 322-323, 328-329.

A Rule 12(b)(6) motion allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if every factual allegation in the complaint, construed in a light most favorable for the plaintiff, is true. *Mayer v. Mylod,* 988 F.2d

635, 638 (6th Cir. 1993). While the court is to accept the factual allegations in the complaint as true, it "need not accept as true legal conclusions or unwarranted factual inferences." *Golf Vill. N., LLC v. City of Powell, Ohio*, 14 F.4th 611, 617 (6th Cir. 2021) (internal quotation marks and citation omitted). To survive a motion to dismiss, a plaintiff must plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 556.

Plaintiff pleads very few facts as it relates to his FCRA claim. One fact he does plead is that Defendants conducted a criminal background check on Plaintiff. However, even accepting this fact as true, Plaintiff cannot state a claim that is plausible on its face.

Three classes of entities are covered by the FCRA: "(1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies." *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 844 (6th Cir. 2004). Plaintiff describes Defendants as "a multinational retail corporation subject to the provisions of the Fair Credit Reporting Act (FCRA) . . . ." without alleging facts to support whether Defendants are consumer reporting agencies, users of consumer reports, or furnishers of information to consumer reporting agencies. (ECF No. 7 at ¶ 314.)

In his Response to the Motion to Dismiss, Plaintiff attempts to clarify that the Amended Complaint asserts Defendants are users of consumer reports: "Plaintiff further alleges that Defendant obtained the background check through a third-party consumer reporting agency rather than compiling the information internally. (ECF No. 7, ¶¶ 319–321.)" (ECF No. 10, PageID.254.) This is a mischaracterization, which Plaintiff repeats

when he states, "the Amended Complaint explicitly states that Defendant obtained the report from a third-party consumer reporting agency. (ECF No. 7, ¶¶ 319–321.)" (ECF No. 10, PageID.255.) The Amended Complaint fails to make any allegation, much less assert any facts in support, that Defendant contracted with a "consumer reporting agency" in any way.

Even if Defendants are entities subject to the FCRA, to establish a claim under the Act, Plaintiff must show (1) the existence of a "consumer report"; (2) that defendant obtained or used the consumer report; and (3) the defendant lacked a permissible purpose for obtaining or using the consumer report. *McFarland v. Bob Saks Toyota, Inc.*, 466 F. Supp. 2d 855, 867 (E.D. Mich. 2006). A "consumer report" is defined to include any "written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing…character, general reputation, personal characteristics." 15 U.S.C. § 1681a(d). Plaintiff fails to allege, much less assert facts to support, that Defendants are a consumer reporting agency or that they received a report from a consumer reporting agency. Without such factual support, Plaintiff's conclusion that a consumer report existed is not plausible. It follows that the other elements of Plaintiff's claim, which are based on there being a consumer report, also cannot be met. As Plaintiff has not adequately plead that Defendants obtained a consumer report, they are not subject to the FCRA's notice and consent provisions.

Plaintiff has failed to state a claim upon which relief can be granted under the FCRA. The Court will grant Defendants' motion to dismiss Count VIII.

- 13 -

## CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED that Defendants' motion for partial dismissal is GRANTED as to Counts V, VI and VIII.


Dated: June 25, 2025

                                              s/ Nancy G. Edmunds
                                              HON. NANCY G. EDMUNDS
                                              UNITED STATES DISTRICT JUDGE